### UNITED STATES DISTRICT COURT DISTRICT OF NEW JERSEY

| | |
|---|---|
| LAMONT VAUGHN, | Civ. No. 21-15045 (EP)(LDW) |
| Plaintiff, | **OPINION** |
| v. | |
| LT. TAYLOR, et al., | |
| Defendants. | |

APPEARANCE:

Lamont Vaughn
217004654
Essex County Correctional Facility
354 Doremus Ave.
Newark, NJ 07105

Plaintiff Pro se

**PADIN**, District Judge.

Plaintiff Lamont Vaughn, a prisoner at the Essex County Correctional Facility ("ECCF") in Newark, New Jersey, is proceeding pro se with a civil rights complaint pursuant to 42 U.S.C. § 1983. D.E. 1. At this time, the Court reviews the complaint, pursuant to 28 U.S.C. § 1915(e)(2) to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief.

For the reasons set forth below, the Court concludes that the complaint may proceed.

## I.     BACKGROUND

This case arises from an alleged assault on Plaintiff by correctional officers at ECCF. According to the complaint,[1] at approximately 12:30 p.m. on June 22, 2021, Lt. Taylor ordered officers to extract Plaintiff from his cell because he was yelling.  D.E. 1 at 2.  Sgt. Matos began to shoot mace balls into Plaintiff's cell.  *Id.*  Officers in riot gear approached Plaintiff's cell, but he refused to allow them to open his cell door because he knew they were coming to assault him.  *Id.* Sgt. Matos reloaded his mace ball gun three times and continued to shoot into Plaintiff's cell.  *Id.* at 5.  "As he shot the mace-ball gun over and over again — filling up my room and my area with mace, I squirted urine in a shampoo bottle out of the hole in my door that he was shooting mace into, trying to squirt it on the officer who was up close to my door spraying canister after canister of mace into my cell — through the crack on the side of the door."  *Id.* at 2.  Sgt. Matos also supplied another officer with at least four cans of pepper spray, which the other officer sprayed into Plaintiff's cell.  *Id.* at 2, 5.  Officers then forced their way in and ordered Plaintiff to get on the ground.  *Id.* at 2.

Plaintiff immediately complied and got on the ground.  *Id.*  Several officers placed their knees on Plaintiff's back and held his legs while another officer handcuffed Plaintiff's left wrist. *Id.*  Then, one officer started punching Plaintiff in the back of his head and another officer kicked him in the face and stomped his head into the floor.  *Id.*  The punching and kicking caused a hemorrhage and swelling in Plaintiff's eye.  *Id.*  The officers yelled "stop resisting," but Plaintiff was not resisting.  *Id.*  Lt. Taylor "just stood right there" while the event unfolded.  *Id.* at 5.  After a few moments, Sgt. Matos came into the cell and grabbed the officer who had kicked Plaintiff in

---

[1] The Court accepts the factual allegations of the complaint as true for screening purposes.  *See Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008).

order to calm the officer down. *Id.* at 3.  The officers then handcuffed Plaintiff's right wrist and took him to the medical unit. *Id.*

At the medical unit, officers placed Plaintiff into a shower to clean the mace off his face and skin. *Id.*  A doctor—identified only as "Michael"—briefly looked at Plaintiff but "told correctional officers to just take [him] to the 'special housing unit' and lock [him] into a cell, and [Dr. Michael] would come and see [Plaintiff] there" because Plaintiff was still yelling. *Id.* at 3, 6. Later, Dr. Michael came to see Plaintiff and examined him from outside of the cell. *Id.*  Plaintiff pointed out his injuries to Dr. Michael, which Plaintiff describes as black and swollen eyes, a cut lip that likely needed stiches, "knots" on his face and back of his head, an inability to bend his neck or raise his arms, and extreme neck and back pain. *Id.* at 3, 6, 8.  According to Plaintiff, Dr. Michael did not even offer to clean his wounds and did not treat him for his injuries. *Id.* at 3, 6. Instead, Dr. Michael left Plaintiff inside of his cell to recover on his own. *Id.*

## II.      STANDARD OF REVIEW

Section 1915(e)(2) requires a court to review complaints prior to service in cases where a plaintiff is proceeding *in forma pauperis*.  The Court must *sua sponte* dismiss any claim that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  This action is subject to *sua sponte* screening for dismissal under 28 U.S.C. § 1915(e)(2)(B) because Plaintiff is proceeding *in forma pauperis* and is incarcerated.

To survive *sua sponte* screening for failure to state a claim, the complaint must allege "sufficient factual matter" to show that the claim is facially plausible. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).  "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged.'" *Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 308 n.3 (3d Cir. 2014)

(quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "[A] pleading that offers 'labels or

conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*,

556 U.S. at 678 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

## III.   DISCUSSION

To state a claim for relief under § 1983, a plaintiff must allege: first, the violation of a right

secured by the Constitution or laws of the United States; and second, that the alleged deprivation

was committed or caused by a person acting under color of state law. *See Malleus v. George*, 641

F.3d 560, 563 (3d Cir. 2011). Plaintiff does not explicitly allege a deprivation of a federally

secured right, but the Court liberally construes the complaint as asserting failure to protect claims

against Lt. Taylor and Sgt. Matos, excessive force claims against Sgt. Matos and the six unnamed

officers, an inadequate medical care claim against Dr. Michael, and a municipal liability claim

against Essex County. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (noting that a pro se

document "is to be liberally construed"). As Plaintiff appears to have been a pretrial detainee at

the time of the alleged violations, his claims fall under the Fourteenth Amendment's due process

clause.

Accepting the facts alleged in the complaint as true and construing the complaint liberally,

the Court concludes that Plaintiff's failure to protect claims against Defendant Lt. Taylor and Sgt.

Matos, excessive force claims against Sgt. Matos and the six unknown officers, and inadequate

medical care claim against Dr. Michael may proceed.[2]

---

[2] The Court's preliminary review under 28 U.S.C. § 1915 does not determine whether the
allegations in the complaint would survive a properly supported motion to dismiss filed by a
defendant after service. *See Richardson v. Cascade Skating Rink*, No. 19-08935, 2020 WL
7383188, at *2 (D.N.J. Dec. 16, 2020) ("[T]his Court recognizes [a] § 1915(e) screening

The Court will also proceed Plaintiff's claim against Essex County. "A municipality cannot be held liable for the unconstitutional acts of its employees on a theory of *respondeat superior*. A plaintiff seeking to hold a municipality liable under section 1983 must demonstrate that the violation of rights was caused by the municipality's policy or custom." *Thomas v. Cumberland Cnty.*, 749 F.3d 217, 222 (3d Cir. 2014) (citing Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978)). "Where the policy 'concerns a failure to train or supervise municipal employees, liability under section 1983 requires a showing that the failure amounts to "deliberate indifference" to the rights of persons with whom those employees will come into contact.'" *Id.* (quoting *Carter v. City of Phila.*, 181 F.3d 339, 357 (3d Cir. 1999)).

Plaintiff alleges Essex County "does not efficiently manage [ECCF], as officers and other supervisory correctional staff are permitted to abuse inmates that are being held in their custody." D.E. 1 at 8. "Essex County is well aware of these happenings as they have been going on for years here, and absolutely nothing has been done about it." *Id.* Plaintiff's allegation that Essex County failed to address a known, continuing problem of violence by correctional officers towards detainees could support a finding of deliberate indifference if true. Therefore, the Court will permit this claim to proceed.[3]

## IV.   CONCLUSION

For the reasons stated above, the Court will proceed the complaint. An appropriate order follows.

Dated: _____8/16/2022_____

_(signature)_

_____
Hon. Evelyn Padin, U.S.D.J.

---

determination is a preliminary and interlocutory holding, subject to revision at any time prior to entry of final judgment." (internal quotation marks omitted)).

[3] Essex County was inadvertently not listed on the docket as a defendant. The Court will instruct the Clerk to add Essex County as a defendant.